AMERICAN ARBITRATION ASSOCIATION

| DADE AUCTIONS, INC.<br>Claimant,<br><br>v.<br><br>OAK CLIFF RECYCLING, INC.<br>Respondent. | CASE NO. 01-21-0016-7725<br><br>CASE ORDER NO. 1 |
|---|---|

## DADE AUCTIONS, INC.'S RESPONSE TO OAK CLIFF RECYLCING'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTON, AND REQUESTS FOR ADMISSION

Now comes Dade Auctions, Inc. (hereinafter "Dade"), by and through counsel, and hereby responds as follows to the interrogatories, requests for production, and requests for admission propounded on Dade by Oak Cliff Recycling, Inc. ("Oak Cliff") on or about April 14th, 2021.

## INTERROGATORY NO. 1

Identify each person who has provided the answers to these interrogatories or who has provided information for formulating the answers to these interrogatories.

    **ANSWER: David Fournier Sr., David Fournier Jr., Andrew Fournier, Greg Szymanski**

## INTERROGATORY NO. 2

Identify the name and, if known, the address and telephone number of each individual likely to have discoverable information pertaining to the Arbitration.

    **ANSWER:** David Fournier Sr., David Fournier Jr., Andrew Fournier, Greg Szymanski
1789 Indian Wood Circle Suite 250 Maumee, Ohio 43537 (844) 333-3030

    Marty Feinberg
1510 18th Street, Fort Madison, Iowa 52627-0284 (319) 316-3719

## INTERROGATORY NO. 3

State with particularity the facts and circumstances evidencing and/or relating to any and all of your communications with Marty Feinberg concerning his alleged interest of the Equipment.

**ANSWER:** See included emails, call logs and the affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

## INTERROGATORY NO. 4

State with particularity the facts and circumstances evidencing and/or relating to your contention that Oak Cliff did not properly terminate the Listing Agreement.

**ANSWER:** See included emails and call logs.

## INTERROGATORY NO. 5

State with particularity the facts and circumstances which led to the formation of the Listing Agreement.

**ANSWER:** Dave Fournier, Senior initially made a sales call to Benjie when he heard from an industry contact that Oak Cliff was looking to sell their shredder. Benjie agreed to sign a listing agreement with DADE Auctions to sell the Equipment. Benjie Smith, on behalf of Oak Cliff Recycling, Inc., entered into a listing agreement with Dade Auctions, Inc. on or about September 15th, 2020. See included emails, documents and call logs for further detail.

## INTERROGATORY NO. 6

State with particularity the facts and circumstances evidencing and/or relating to any and all communications with Benjie Smith concerning the Equipment and/or the Listing Agreement.

**ANSWER:** See included emails, documents and call logs.

## INTERROGATORY NO. 7

State with particularity the facts and circumstances which evidence the financial harm and harm to Dade's reputation when the Listing Agreement was terminated by Oak Cliff.

**ANSWER:** Per the listing agreement between the parties, Dade Auctions, Inc. was entitled to an amount equal to 20% of the total purchase price of the item (10% from the buyer and 10% from the seller). The initial list price of the item at issue was $750,000, meaning Dade would have derived $150,000 from a successful sale. Due to Benjie's untimely, unilateral repudiation of the agreement, coupled with his persistent denial to provide adequate assurance of Dade's insecurity when asked, they were unable to sell the equipment. They had a ready, willing and able buyer conducting due diligence at the time Oak Cliff began exhibited grounds for insecurity, as evidenced by the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff. Additionally, See included emails, documents and call logs.

**INTERROGATORY NO. 8**

State with particularity the facts and circumstances which evidence your contention that Oak Cliff was trying to sell the Equipment outside the Listing Agreement prior to termination of the Listing Agreement.

> **ANSWER: Representatives of Dade have been told by Marty Feinberg that Oak Cliff generally, and Benjie Smith specifically, were attempting to sell the equipment outside of the limitations imposed by the listing agreement in several of his discussions with Benjie Smith.**

**INTERROGATORY NO. 9**

State with particularity the facts and circumstances of each and every communication with any and all prospective buyers for the Equipment while the Equipment was listed with Dade under the Listing Agreement.

> **ANSWER: See included emails, documents and call logs.**

**INTERROGATORY NO. 10**

State with particularity the facts and circumstances which evidence Marty Feinberg's ability to purchase the Equipment, close, and consummate the transaction.

> **ANSWER: See the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.**

**INTERROGATORY NO. 11**

State with particularity the facts and circumstances evidencing each and every offer made for the Equipment during the pendency of the Listing Agreement.

> **ANSWER: See the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff, See included emails, documents and call logs. Due to the grounds for insecurity created by Benjie Smith's actions and his subsequent repudiation, the buyer was deterred from making a formal offer.**

**INTERROGATORY NO. 12**

State with particularity the facts and circumstances that evidence and/or relate to your contention that Oak Cliff did not work in good faith to facilitate sale of the Equipment.

> **ANSWER: See included emails, documents and call logs.**

**INTERROGATORY NO. 13**

State with particularity the facts and circumstances evidencing and/or relating to Marty Feinberg's contention that the purchase price of the Equipment should be reduced.

**ANSWER:** Mr. Feinberg had discussed with Oak Cliff about dismantling and loading the Equipment himself, to make sure it was done correctly, and was potentially looking for a discount due to the work saved on Oak Cliff's side.

## INTERROGATORY NO. 14

State with particularity the facts and circumstances which evidence and/or tend to prove your contention that Dade acted "commercially reasonable" by suspending its performance of the Listing Agreement.

**ANSWER:** After several emails from Benjie Smith raised legitimate and reasonable grounds for insecurity that he would not perform under the contract, Dade reasonably believed that Oak Cliff generally, and Benjie Smith specifically, would impair due performance under the contract. Thus, in an email dated 9-24-21, Dade wrote to Oak Cliff and demanded assurance of due performance. In response, Benjie Smith, on behalf of Oak Cliff, stated "I sent a [sic] email you [sic] on September 1st telling you I did not want to continue the listing. We do not have any commitments as we speak." Having not received assurance after demanding the same in writing, it was commercially reasonable to suspend any performance for which Dade had not already received the agreed return and treat it as a breach. Oak Cliff's action rendered a sale impossible. Additionally, members of Dade can and will testify to the commercial reasonableness of not trying to sell something that's not for sale.

## INTERROGATORY NO. 15

State with particularity the facts and circumstances which evidence and/or tend to prove your contention that you have been in regular contact with Marty Feinberg during the pendency of the Listing Agreement.

**ANSWER:** See included emails, documents and call logs.

## INTERROGATORY NO. 16

If Marty Feinberg is no longer interested in purchasing the equipment through Dade, state with particularity the efforts made by Dade to negotiate with him as a prospective purchaser of the Equipment.

**ANSWER:** Dade is not the Seller and has no right to negotiate with any prospective Buyer without the direct input of the Seller. Dade can only encourage both parties to continue to negotiate the sale price. According to Marty Feinberg and Benjie Smith's admission via email, Oak Cliff went silent and would not respond to Buyers calls after Marty Feinberg told him the sale must go through Dade Auctions - not around Dade Auctions. See included emails, documents and call logs. More specifically, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

## INTERROGATORY NO. 17

EXHIBIT B

Describe with particularity your understanding of each party's duties, responsibilities, and obligations under the Listing Agreement.

> **ANSWER: A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. In terms of the listing agreement at issue, it imposed an obligation that Oak Cliff, among other things, extend an irrevocable offer to sell the Equipment to certain bidders that meet price criteria, that they pay a fee of 20% of the listing price or fair market value of the equipment if they cancel or terminate the agreement prior to it's expiration for any reason, that it provide termination notice 15 days prior to end date of the agreement to effectively cancel the contract and that they cooperate with Dade in the sale of the equipment. In exchange, among other things, Dade is obligated to use its best efforts to market and sell the equipment, provide online marketing services and access to its website and network of potential buyers for the purposes of the sale. Further, In addition to the contract's express terms, every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement. See *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443, 662 N.E.2d 1074 (1996); Restatement of the Law 2d, Contracts, Section 205 (1981); see also R.C. 1301.304.**

## INTERROGATORY NO. 18

Describe with particularity why you believe you are entitled to damages as a result of the actions/inactions of the parties to the Listing Agreement.

> **ANSWER: See Section 5 of the listing agreement, which states: "any cancellation or termination prior to the listing agreement expiration for any reason, will incur a 20% fee of the listed value or Fair Market Value as determined by Dade Auctions, to you as the seller." Further, the actions of Oak Cliff – as shown by the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff – indicates that the early termination of the Contract frustrated Dade's ability to realize the reasonable expectation of its efforts.**

## INTERROGATORY NO. 19

Identify (by Bates number or otherwise) any and all non-privileged documents which you contend support your prosecution of this Arbitration.

> **ANSWER: See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.**

## INTERROGATORY NO. 20

Identify each person who has been retained by you as an expert or consultant and who you may call as an expert witness at the hearing of this Arbitration, and for each such person:

(a) State whether the expert is expected to testify at trial;

(b) State the subject matter on which the expert has been retained to consult;

(c) State the substance of the facts and opinions to which the expert is expected to opine and the facts and opinions upon which they may rely on in providing such testimony;

(d) Identify the expert's qualifications, including, but not limited to, their field of expertise, education, employment history, teaching or instructional experience, and any publications written or edited by the expert;

(e) Identify all matters (including the identity of the individual who retained the expert, the style of the case in question, the court in which the case was pending, and the identity of all other attorneys involved in this case) in which the expert has been retained to consult and/or testify in the last five (5) years; and

(f) State whether the expert has prepared a report of their findings, whether oral or written, and, if so, produce a copy of any such report.

**ANSWER:**

(a) Dave Fournier, Sr.

(b) Mr. Fournier, Sr. is expected to testify to the following: his knowledge, expertise, and the used heavy equipment business generally; his role and responsibilities as owner of Dade; the role of a heavy equipment broker in an equipment sale verses the use of Dade's auction website, www.dadeauctions.com; Dade's day-to day practices related to its online auction business; Dade's policies, procedures, and practices related to client management; the terms and conditions relevant to use of Dade's auction website by buyers and sellers, including Dade Auctions, Inc. Buyer Terms and Conditions; Dade Auctions, Inc. Seller Terms and Conditions; and Dade Auctions, Inc. Website Terms and Conditions; the process and procedure of listing and selling a piece of used heavy equipment through Dade's auction website, including (a) negotiation and execution of a listing agreement between Dade Auctions, Inc. and a seller of used equipment, and (b) the website equipment listing and approval process; the process and procedure of buying a piece of used heavy equipment through Dade's auction website, including the website's "Buy Now," "Make Offer," "Ask Seller a Question," and "Request Inspection" options for potential buyers. He is also expected to testify about commercial reasonableness as it relates to the heavy equipment brokerage industry and matters relating to damages.

(c) Mr. Fournier, Sr. is expected to testify that he initially made a sales call to Benjie Smith when he heard from an industry contact that Oak Cliff was looking to sell their shredder. He will further testify that Benjie Smith agreed to sign a listing agreement with Dade Auctions to sell the Equipment and that Benjie Smith, on behalf of Oak Cliff Recycling, Inc., entered into a listing agreement with Dade Auctions, Inc. on or about September 15th, 2020. He will further testify that it was initially effective for 180

days, and automatically renewed for successive 180 day periods unless notice of intent to terminate was provided 15 days in advance of the next effective renewal date. The agreement first renewed on or about March 14, 2021, and the second renewal occurred on or about September 10, 2021. The email detailing Oak Cliff's intent to terminate the listing was received on September 1, 2021. In order to effectively non-renew/terminate the listing, Oak Cliff was required to provide notice not later than August 26, 2021, 15 days prior to the scheduled renewal date. Accordingly, he will testify that the listing automatically renewed, and was effective through March 9, 2022. He will testify that they sought adequate assurances of performance from Benji Smith once grounds for insecurity arose, but that they were told by Oak Cliff that "We do not have any commitments as we speak." His opinion is that, given the acts and omissions of Oak Cliff in causing grounds for insecurity, it was commercially reasonable to suspend performance, that the liquidated damages provision in the contract is routine, fair and enforceable and that a broker cannot reasonably sell equipment when a seller won't sell or otherwise cooperate. He will also opine as to how a situation such as the instant matter hurts a broker's reputation by deterring buyers from trusting them in the future regarding representations they make.

(d) Mr. Fournier, Sr. is the founder and owner of Dade Auctions, Inc. Mr. Fournier, Sr. has extensive experience in the used heavy equipment industry, specifically in the sale and brokerage of used recycling and waste management equipment. Mr. Fournier, Sr. has intimate knowledge of the facts at issue in this case as they relate to Dade's involvement in hosting and running the online auction website, www.dadeauctions.com, which was used by Oak Cliff to list the equipment at issue. Mr. Fournier, Sr. has specialized business knowledge based on his decades-long experience in the used equipment industry.

(e) None

(f) No

Mr. Fournier, Sr. reserves the right to use any demonstrative exhibits at trial to aid in the presentation of his expert opinions and assist the trier of fact in understanding the testimony. Mr. Fournier, Sr. further reserves the right to not offer any of the above-anticipated opinions and/or to modify his opinions based on any new information presented. Dade specifically reserves the right to call at trial the expert witnesses disclosed by Plaintiff and incorporates Plaintiff's experts' opinions by reference herein, as if set forth in full. Dade further reserves the right to supplement the opinions of its expert based on further anticipated discovery.

## INTERROGATORY NO. 21

Identify and describe with particularity all work done by Dade to procure a buyer for the Equipment under the Listing Agreement.

> **ANSWER:** To procure a buyer for the Equipment Dade included it in 8 months of print ads in American Recycler News from January to August of 2021. Dade works with Machinio - an online equipment sales site - to post all listings on their site. Dade

included the Equipment in 3 email campaigns sent to their customer database - one in November 2020, January 2021, and June 2021. Dade posted the Equipment listing as available on their three Facebook pages - Dade Auctions, Dade Capital Corp., and Heavy Equipment For Sale. Dade also reached out to their industry contacts who may have been interested in the Equipment or who may know of someone who is.

## INTERROGATORY NO. 22

Describe with particularity Dade's marketing plan to procure a buyer for the Equipment under the Listing Agreement.

> **ANSWER:** Dade's marketing plan consists of print ads run in American Recycler News, email blasts to their database of customers, posts to their multiple Facebook pages, posting equipment to Machinio - an online equipment sales site, and reaching out personally to all industry contacts that may be interested.

## INTERROGATORY NO. 23

Describe with particularity where Dade listed the Equipment for sale to attract buyers.

> **ANSWER:** The equipment was listed on the Dade Auctions website, the Dade Auctions Facebook page, listed on Machinio as a Dade Auctions listing, the affiliated Heavy Equipment for Sale Facebook page, and the Dade Capital Corp. Facebook page.

### FIRST REQUESTS FOR PRODUCTION TO DADE AUCTIONS, INC.

## REQUEST FOR PRODUCTION NO. 1

Produce any and all written communications and/or documents and/or audio recordings exchanged between you and alleged prospective buyer Marty Feinberg.

> **RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

## REQUEST FOR PRODUCTION NO. 2

Produce any and all written communications, including, without limitation, audio recordings, emails, letters, and text messages and/or documents exchanged between you and Benjie Smith and/or any other representatives of Oak Cliff concerning the Equipment and/or Listing Agreement.

> **RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

## REQUEST FOR PRODUCTION NO. 3

Produce any and all documents and/or communications that tend to prove or evidence your contention that Oak Cliff did not properly terminate the Listing Agreement.

>    **RESPONSE: See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.**

### REQUEST FOR PRODUCTION NO. 4

Produce any and all documents and/or communications that tend to prove or evidence your contention that Oak Cliff did not properly terminate the Listing Agreement.

>    **RESPONSE: Duplicative of request number 3 above. See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.**

### REQUEST FOR PRODUCTION NO. 5

Produce any and all documents that tend to prove your contention that Dade suffered financial harm as a result of the termination of the Listing Agreement.

>    **RESPONSE: See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.**

### REQUEST FOR PRODUCTION NO. 6

Produce any and all documents that tend to prove or evidence your contention that Dade suffered harm to its reputation as a result of the termination of the Listing Agreement.

>    **RESPONSE: See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff. Additionally, Dade representatives will testify that it is per se injurious to a their reputation whenever they hold equipment out for sale and the seller dishonors their obligation to make it available for sale.**

### REQUEST FOR PRODUCTION NO. 7

Produce any and all documents and/or communications that tend to prove or evidence your contention that Oak Cliff tried to sell the Equipment outside the Listing Agreement before termination of the Listing Agreement.

>    **RESPONSE: Representatives of Dade have been told by Marty Feinberg that Oak Cliff generally, and Benjie Smith specifically, were attempting to sell the equipment outside of the limitations imposed by the listing agreement in several of his discussions with Benjie Smith.**

**REQUEST FOR PRODUCTION NO. 8**

Produce any and all documents and/or communications exchanged between you and Eagle Tech Recycling pertaining to the Equipment and/or Listing Agreement.

> **RESPONSE: See included emails, documents and call logs.**

**REQUEST FOR PRODUCTION NO. 9**

Produce any and all documents and/or communications exchanged between you and William Dagostin pertaining to the Equipment and/or Listing Agreement.

> **RESPONSE: See included emails, documents and call logs.**

**REQUEST FOR PRODUCTION NO. 10**

Produce any and all documents and/or communications exchanged between you and Heliezer Hernandez pertaining to the Equipment and/or Listing Agreement.

> **RESPONSE: See included emails, documents and call logs.**

**REQUEST FOR PRODUCTION NO. 11**

Produce any and all documents and/or communications exchanged between you and any and all prospective buyers for the Equipment during the pendency of the Listing Agreement.

> **RESPONSE: See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.**

**REQUEST FOR PRODUCTION NO. 12**

Produce any and all documents and/or communications that evidence and/or tend to prove that Marty Feinberg had the ability to purchase the Equipment during the pendency of the Listing Agreement.

> **RESPONSE: See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.**

**REQUEST FOR PRODUCTION NO. 13**

Produce any and all documents and/or communications that evidence or tend to prove each and every offer from a prospective buyer for the Equipment during the pendency of the Listing Agreement that you procured.

EXHIBIT B

**RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 14

Produce any and all documents and/or communications that evidence and/or tend to prove your contention that Oak Cliff did not work in good faith to facilitate the sale of the Equipment.

**RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 15

Produce any and all documents and/or communications that evidence and/or tend to prove your contention that Oak Cliff agreed to reduce the purchase price of the Equipment under the Listing Agreement.

**RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 16

Produce any and all documents and/or communications that evidence and/or tend to prove your contention that Dade acted "commercially reasonable" by suspending its performance of the Listing Agreement.

**RESPONSE:** See Ohio Revised Code §1302.67. Additionally, See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 17

Produce any and all documents and/or communications that evidence and/or tend to prove your contention that you have been in regular contact with Marty Feinberg during the pendency of the Listing Agreement.

**RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 18

Produce any and all documents and/or communications that evidence and/or tend to prove Dade's efforts to keep Marty Feinberg as a prospective purchaser of the Equipment.

EXHIBIT B

**RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 19

Produce any and all Asset Management Reports created by Dade in reference to the Equipment during the pendency of the Listing Agreement.

**RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 20

Produce any and all communications and/or documents exchanged between Dave Fournier, Jr. and Oak Cliff pertaining to the Equipment and Listing Agreement.

**RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 21

Produce all documents that support your answers to Interrogatories.

**RESPONSE:** See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 22

Produce all documents identified in response to Interrogatories.

**RESPONSE:** Duplicative of request number 21. See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.

### REQUEST FOR PRODUCTION NO. 23

Produce all documents on which each expert witness you expect to call to testify at any hearing or at the trial of this Arbitration relied in forming any opinion he/she formed in connection with this Arbitration.

**RESPONSE:** See included emails, documents and call logs. Additionally, he will testify from personal knowledge.

### REQUEST FOR PRODUCTION NO. 24

Produce all communications between you and any expert witness expected to testify at any hearing or at the trial of this Arbitration.

    **RESPONSE: None.**

## REQUEST FOR PRODUCTION NO. 25

Produce any and all marketing materials used in Dade's efforts to market and sell the Equipment.

    **RESPONSE: See included emails, documents and call logs. Also, see the Affidavit of Marty Feinberg executed on or about 1/13/2022 and previously provided to counsel for Oak Cliff.**

### FIRST SET OF REQUESTS FOR ADMISSION TO DADE AUCTIONS, INC.

## REQUEST FOR ADMISSION NO. 1

Admit that Oak Cliff did not breach the Listing Agreement by sending Notice of Termination for the Listing Agreement on or about September 1, 2021.

    **ANSWER: Deny. With respect to the notice of termination, Oak Cliff did not breach - but instead repudiated - the contract by creating reasonable grounds for insecurity and failing to provide, within a reasonable time not exceeding thirty days, such assurance of due performance after receipt of a justified demand. See Ohio Revised Code §1302.67, et al. However, Oak Cliff breached its duty of good faith and fair dealing throughout the term of the agreement at various times.**

## REQUEST FOR ADMISSION NO. 2

Admit that during the pendency of the Listing Agreement, there were no offers made to buy the Equipment by any prospective purchasers.

    **ANSWER: Admit.**

## REQUEST FOR ADMISSION NO. 3

Admit that during the pendency of the Listing Agreement, Marty Feinberg did not execute a contract to buy the Equipment.

    **ANSWER: Admit.**

## REQUEST FOR ADMISSION NO. 4

Admit that Oak Cliff properly terminated the Listing Agreement on September 1, 2021.

**ANSWER:** Deny. Every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement. Oak Cliff repeatedly breached this duty by refusing to communicate with Dade and ignoring multiple request for inspections by prospective purchasers. Further, Oak Cliff repudiated the contract by creating reasonable grounds for insecurity and failing to provide, within a reasonable time not exceeding thirty days, such assurance of due performance after receipt of a justified demand. See Ohio Revised Code §1302.67, et al.

**REQUEST FOR ADMISSION NO. 5**

Admit that Oak Cliff properly terminated the Listing Agreement on February 24, 2022.

**ANSWER:** Deny.

**REQUEST FOR ADMISSION NO. 6**

Admit that Dade and Oak Cliff had a good business relationship before entering into the Listing Agreement.

**ANSWER:** Deny.

**REQUEST FOR ADMISSION NO. 7**

Admit that Dade has not suffered any financial harm as a result of the termination of the Listing Agreement.

**ANSWER:** Deny.

**REQUEST FOR ADMISSION NO. 8**

Admit that Dade has not suffered any harm to your reputation as a result of the termination of the Listing Agreement.

**ANSWER:** Deny.

**REQUEST FOR ADMISSION NO. 9**

Admit that Dade initiated this dispute solely to pursue the liquidated damages provision in the Listing Agreement.

**ANSWER:** Deny.

**REQUEST FOR ADMISSION NO. 10**

Admit that the liquidated damages provision as mentioned in section 1 of the Listing Agreement referencing a 20% fee of the listed value or fair market value upon early termination as determined by Dade is not reasonable.

EXHIBIT B

**ANSWER: Deny.**

### REQUEST FOR ADMISSION NO. 11

Admit that the liquidated damages provision as mentioned in section 1 of the Listing Agreement referencing a 20% fee of the listed value or fair market value upon early termination as determined by Dade is void as against public policy.

**ANSWER: Deny.**

### REQUEST FOR ADMISSION NO. 12

Admit that damages for breach of the Listing Agreement are not difficult to ascertain.

**ANSWER: Deny.**

### REQUEST FOR ADMISSION NO. 13

Admit that damages for breach of the Listing Agreement are not difficult to prove.

**ANSWER: Deny.**

### REQUEST FOR ADMISSION NO. 14

Admit that the liquidated damages provision as mentioned in section 1 of the Listing Agreement referencing a 20% fee of the listed value or fair market value upon early termination as determined by Dade is disproportionate in amount and does not express the intent of the parties to the Listing Agreement.

**ANSWER: Deny.**

### REQUEST FOR ADMISSION NO. 15

Admit that the liquidated damages provision as mentioned in section 1 of the Listing Agreement referencing a 20% fee of the listed value or fair market value upon early termination as determined by Dade is not reasonable.

**ANSWER: Deny.**

### REQUEST FOR ADMISSION NO. 16

Admit that Oak Cliff was not trying to sell the Equipment outside the Listing Agreement before termination of the Listing Agreement.

**ANSWER: Deny.**

### REQUEST FOR ADMISSION NO. 17

EXHIBIT B

Admit that Marty Feinberg never had the ability to complete the purchase of the Equipment.

**ANSWER: Cannot truthfully admit or deny the matters set forth in this request because (s)he does not have knowledge of these matters, and despite reasonable inquiry into the matter by reviewing all of the records and information available to him, to obtain information from which the truth or falsity of the matter might be learned.**

## REQUEST FOR ADMISSION NO. 18

Admit that Oak Cliff worked in good faith to facilitate the sale of the Equipment.

**ANSWER: Deny.**

## REQUEST FOR ADMISSION NO. 19

Admit that you have not maintained "regular contact" with Marty Feinberg during the pendency of the Listing Agreement.

**ANSWER: Deny.**

## REQUEST FOR ADMISSION NO. 20

Admit that Marty Feinberg is not interested in purchasing the Equipment as of the date of your Response to this Request for Admission.

**ANSWER: Admit. However, this is solely due to the acts and/or omissions of Oak Cliff in breaching their contractual obligations and sowing insecurity in their willingness to perform.**

## REQUEST FOR ADMISSION NO. 21

Admit that Dade did nothing to keep Marty Feinberg interested in purchasing the Equipment.

**ANSWER: Deny.**

## REQUEST FOR ADMISSION NO. 22

Admit that Eagle Tech Recycling did not make an offer on the Equipment.

**ANSWER: Admit. This is due to Oak Cliff repeatedly breaching it's duty by refusing to communicate with Dade and ignoring multiple requests for inspections by prospective purchasers.**

## REQUEST FOR ADMISSION NO. 23

Admit that William Dagostin did not make an offer on the Equipment.

> ANSWER: Admit. This is due to Oak Cliff repeatedly breaching it's duty by refusing to communicate with Dade and ignoring multiple requests for inspections by prospective purchasers.

### REQUEST FOR ADMISSION NO. 24

Admit that Heliezer Hernandez did not make an offer on the Equipment.

> ANSWER: Admit. This is due to Oak Cliff repeatedly breaching it's duty by refusing to communicate with Dade and ignoring multiple requests for inspections by prospective purchasers.

### REQUEST FOR ADMISSION NO. 25

Admit that Oak Cliff did not agree to reduce the purchase price for the Equipment under the Listing Agreement.

> ANSWER: Deny.