IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Oak Cliff Recycling, Inc.,            Case No. 3:23 CV 399

           Plaintiff,            ORDER CONFIRMING
                                   ARBITRATION AWARD
     -vs-

Dade Auctions, Inc.,            JUDGE JACK ZOUHARY

           Defendant.

## INTRODUCTION

Plaintiff Oak Cliff Recycling ("Oak Cliff") contracted with Defendant Dade Auctions ("Dade") to auction off an industrial shredder.  The deal fell apart, and the parties went to arbitration.  The arbitrator sided with Dade.  Oak Cliff then filed this suit, seeking to vacate the Award.  Dade responds that this Court should confirm.

## BACKGROUND

Oak Cliff and Dade entered into an Auction Listing Agreement for a shredder in September 2020 (Doc. 1-1).  Under the Agreement, Oak Cliff would provide Dade with a shredder, and the exclusive right to sell the shredder in exchange for a 10% commission.

The Agreement contained two clauses important here.  First, the automatic-renewal clause states: "[t]his agreement expires 180 days after your digital signature date . . . and shall automatically renew for the same term until the sales transaction is completed" (*id.* at 1).  To effectively cancel the

contract renewal, Oak Cliff had to provide notice 15 days prior to the end of the Agreement (*id.*). Second, the liquidated-damages clause reads: "Any cancellation or termination prior to the listing agreement expiration for any reason, will incur a 20% fee of the listed value for Fair Market Value as determined by Dade Auctions, to [Oak Cliff] as the seller" (*id.* at 2).

From September 15, 2020, to September 1, 2021, Dade presented Oak Cliff with no offers on the shredder, which was listed at $675,000 (Doc. 1). The Agreement, which had renewed in March 2021, was set to renew again on September 10. On September 1, Oak Cliff sent an email to Dade attempting to terminate the Agreement and prevent the automatic renewal (*id.* at 3). Unfortunately for Oak Cliff, the notice was too late -- sent only 9 days before the renewal date. Oak Cliff refused to proceed with the next 180-day listing period. Dade delisted the shredder and sought the 20% cancellation fee; Oak Cliff declined to pay (*id.* at 4).

Dade then initiated arbitration in October 2021. The arbitrator issued an Interim Award in October 2022, finding the termination notice was ineffective and the contract had auto-renewed through March 2022. The arbitrator ordered Oak Cliff to pay Dade $135,000 (20% of the listed cost), as well as attorney fees and costs (Docs. 1-2, 1-3). Meanwhile, Oak Cliff decided to cut its losses and sell the shredder to a third party for $375,000 (Doc. 1-5 at 146).

## LEGAL STANDARD

The Agreement states that "[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be decided and settled by binding arbitration in accordance with Title 9 of the U.S. Code (United States Arbitration Act) . . ." (Doc. 1-1 at 4). Under Title 9, otherwise known as the Federal Arbitration Act ("FAA"), this Court's review of an arbitrator's decision is "one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift*

*Co.*, 512 F.3d 294, 305 (6th Cir. 2008) (internal quotations omitted). "Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Gunasekera v. War Mem'l Hosp. Inc.*, 841 F. App'x 843, 845 (6th Cir. 2021) (citation omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Section 10(a) "identifies the four 'exclusive' grounds on which a federal court may vacate an arbitrator's decision." *Hale v. Morgan Stanley Smith Barney LLC*, 2023 WL 2972572, at *3 (6th Cir. 2023) (citation omitted). They include: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct . . . or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)–(4). "Additionally, the Sixth Circuit has held that a court may vacate an arbitration award if it displays 'manifest disregard of the law.'" *HBK Sorce Fin. v. Ameriprise Fin. Servs.*, 2012 WL 4505993, at *2 (N.D. Ohio 2012) (citing *Jacada (Europe), Ltd. v. Int'l Mkt. Strategies, Inc.*, 401 F.3d 701, 713 (6th Cir. 2005)).

## THE AWARD

Oak Cliff argues that the arbitrator exceeded his powers under Section 10(a)(4) when he: (1) found the Agreement was not cancelled until March 9, 2022, but proceeded with arbitration before that date; and (2) failed to consider the shredder's fair market value.

3

*The Cancellation Notice*

Oak Cliff first asserts the arbitrator proceeded too early, thereby exceeding his powers "when he found that the agreement was not canceled until March 9, 202[2], yet proceeded with arbitration that was filed before that date" (Doc. 15 at 5). From Oak Cliff's perspective, the arbitrator's findings that the September 1 notice breached the agreement, yet did not effectively terminate it, are contradictory. But both of these findings can be accurate.

Oak Cliff clearly failed to give the required 15-day notice, meaning the contract automatically renewed. Oak Cliff then breached the ongoing Agreement by refusing to honor the Agreement and directing Dade to delist the shredder. This "early termination" breached the Agreement, triggering the liquidated-damages clause and binding-arbitration provision. Put more simply, refusing to continue the listing for the next 180-day period without providing the required 15-day notice *was* the breach. Indeed, Oak Cliff's owner Benjie Smith stated on October 15, 2021: "I do not want to sell my shredder as my listing agreement with Dade doesn't exist anymore" (Doc. 1-2 at 8). Neither the Agreement, nor the FAA, required the arbitrator to wait until March 2022 to issue the Interim Award.

*Fair Market Value*

Oak Cliff's primary argument is that the arbitrator improperly used the "listed value" of the shredder and not "the fair market value established by the actual sale price of $375,000" (Doc. 1 at 20). This argument fails for two reasons.

First, Oak Cliff's sale of the shredder for $375,000 does not establish its true fair market value. As the arbitrator noted (Doc. 1-2 at 13):

> Oak Cliff's sale of the shredder for $375,000, sometime in the spring or summer of 2022 was for a price that Smith described as "barely above scrap value," which low price may well have been due to pressure on Smith to sell, which pressure may likely have been of Smith's own making. Smith testified that he had agreed with

the City of Waxahatchie that he would not use the [] shredder and that he needed to move it out to make way for a new shredder that he had purchased and needed to install in the same location.

Second, the Agreement plainly stated that the fee could be 20% of the "listed value" *or* "the fair market value as determined by Dade Auctions" (Doc. 1-1 at 2). The arbitrator found "Dade [] is entitled to recover damages determined as of the date of Oak Cliff's breach of the Agreement . . . ." (Doc. 1-2 at 14). In September 2021, the shredder was listed for sale at $675,000 (*id.* at 13). The arbitrator thoroughly outlined why this listed value was more appropriate to make Dade whole under the Agreement (Doc. 1-2 at 13):

> Otherwise stated, when Oak Cliff directed Dade to shut-down the listing Oak Cliff breached the Agreement, and Dade's damages included not only the loss of opportunity to earn the seller's fee but also the loss of opportunity to earn the buyer's fee -- which damages were both foreseeable and the direct result of Oak Cliff's breach of the listing Agreement.

According to Oak Cliff, the "[t]he award is manifestly imperfect in light of the evidence that the shredder did not generate any offers even close to this number" (Doc. 15 at 6). But, as addressed further below, the fact that the arbitrator chose the listed value over the actual sale price does not establish he acted improperly. *See Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, 205 F.3d 1340 (table) (6th Cir. 2000) (noting that "[i]t is the arbitrators who are the judges of the relevance and materiality of the evidence offered").

### *Public Policy*

As a last gasp, Oak Cliff argues the Award should be vacated on public-policy grounds under Ohio law (Doc. 15 at 7). But the public-policy exception that Oak Cliff references applies specifically in the context of labor arbitration. Labor arbitration is separate and distinct from commercial arbitration: "Although labor arbitrations and commercial arbitrations share legal concepts, these areas

5

of law are not interchangeable." *Samaan v. Gen. Dynamics Land Sys.*, 835 F.3d 593, 599 (6th Cir. 2016). Labor arbitration is governed by federal labor law, not the FAA. *Id.*

Oak Cliff cites a single arbitration-review case in support of its assertion that the public-policy ground is not limited to the labor context. *See Bd. of Cnty. Comm'rs v. L. Robert Kimball & Assocs.*, 860 F.2d 683 (6th Cir. 1988). But that 1988 case involved an employment contract, not a commercial agreement. Further, the Supreme Court has since clarified that Sections 10 and 11 of the FAA provide the "exclusive regime[]" for federal court review of arbitration awards. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008). As noted above, there are five grounds upon which this Court may vacate an award -- public policy is not one of them.

Even so, the arbitrator analyzed the exception, applied the relevant Ohio law, and found the liquidated-damages provision was not an unlawful penalty clause (Doc. 1-2). The arbitrator thoroughly addressed Oak Cliff's public-policy arguments, applying an Ohio three-part test to the "operative facts and circumstances" of the case (*see id.* at 10) (citing *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St. 3d 27, 29 (1984)). His reasoning did not manifestly disregard state law. Oak Cliff may not like the arbitrator's application of the law; but to prove manifest disregard, Oak Cliff must show the arbitrator chose to ignore the law entirely. *Dawahare v. Spencer*, 210 F.3d 666, 671 (6th Cir. 2000). This generally requires outrageous circumstances. *Nathan v. Fieger & Fieger, P.C.*, 31 F.4th 367, 375 (6th Cir. 2022). Only if "no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Peabody Coal Co.*, 205 F.3d 1340. Mere errors in the interpretation or application of the law are not enough, "the decision must fly in the face of clearly established legal precedent." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995). This Award does not shock.

A final point. Were this Court to also apply the Ohio standard of review, as Oak Cliff requests, the outcome would not change. Ohio courts have long held:

> that the arbitrator is the final judge of both law and facts, and that an award will not be set aside except upon a clear showing of fraud, misconduct or some other irregularity rendering the award unjust, inequitable, or unconscionable . . . , and that even a grossly erroneous decision is binding in the absence of fraud.

*Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 42 Ohio St. 2d 516, 522 (1975) (citations omitted). *See also In re Arb. Between William Farley & Eaton Corp.*, 2016 WL 3619306, at *2 (N.D. Ohio 2016), *aff'd sub nom. Farley v. Eaton Corp.*, 701 F. App'x 481 (6th Cir. 2017) ("Review of an award under Ohio law, Ohio Revised Code § 2711, is similarly narrow" to review under the FAA).

## CONCLUSION

"[T]he standard for reviewing arbitration awards is one of the narrowest standards of judicial review in all of American jurisprudence." *Mich. Family Res., Inc. v. SEIU Local 517M*, 438 F.3d 653, 656 (6th Cir. 2006) (citation and internal quotation marks omitted). Therefore, a party seeking to vacate an arbitration award under section 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). Because Oak Cliff fails to carry this burden, the Arbitration Awards (Docs. 1-2, 1-3) are upheld.

IT IS SO ORDERED.

                s/ *Jack Zouhary*
                JACK ZOUHARY
                U. S. DISTRICT JUDGE

                August 15, 2023